AUGUSTUS S. LOYLESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91724. Promulgated September 29, 1939.

*M. E. Kilpatrick, Esq.*, for the petitioner.
*S. B. Anderson, Esq.*, for the respondent.

### OPINION.

DISNEY: The petitioner is an individual, residing in Atlanta, Georgia. The tax in controversy is income tax for the calendar year 1934. The asserted deficiency is $361.28, of which only that part is

in dispute which arises from the refusal of the respondent to recognize the petitioner as the head of a family, and in computing his taxable income to allow him as such an exemption of $2,500, and a credit of $400 for one dependent, his mother.

Petitioner's father died on November 11, 1931, leaving assets appraised at approximately $13,118.09, exclusive of certain real estate which was mortgaged and the mortgagees as to which were paid $1,115 not to seek deficiency judgments, after such real estate had been sold, subject to mortgages, for $400, which was all absorbed by costs of sale, and exclusive of a bond which had been sold and the proceeds applied upon indebtedness to petitioner, as hereinafter stated. The above appraisement included bonds appraised at $3,000, which were, however, in petitioner's income tax return valued at $11,250, in connection with a claim of loss, which was disallowed, and as to which disallowance no error is claimed. Petitioner's father had been engaged at the time of his death in the publishing business and owed in connection therewith approximately $15,000, in addition to taxes. Funeral expenses were incurred in the amount of about $1,250. The taxes were paid for approximately $786.90, and of the remaining debts an item of $6,762.48 was settled for $3,000.

Petitioner's mother, Flora S. Loyless, was separated from his father, Donald A. Loyless, against whom she held an alimony judgment dated March 25, 1928, of $200 per month.

Petitioner was, under said will, the sole legatee of his father's estate and was familiar with its condition. He was nominated as an executor of the will, but refused to qualify as such and the Fulton National Bank of Atlanta, Georgia, was the sole executor of the said decedent's estate. The executor paid the alimony to decedent's wife at least until about May 1933.

The petitioner desired to get control of his father's publishing business and, for the purpose of paying off some of the debts of the publishing business and keeping the business in operation, advanced to the executor of his father's estate the sum of $6,572.50, but was repaid $4,012.50 from sale of assets, to wit, a bond, not included in the appraisement of $13,118.09, above referred to. The petitioner took over the business of his father's estate and managed it, subject to the approval of the trust department of the Fulton National Bank of Atlanta, Georgia.

During the taxable year, the petitioner and his mother, then about 62 or 63 years of age, lived together in northeast Atlanta, Georgia, in a residence which was owned by his mother. The value thereof is not shown. The mother was not capable of working and was highly nervous. She had no children other than petitioner, and he in 1934

contributed to her support by paying taxes, insurance, living expenses—food, clothing, and maintenance of the home, to the extent of approximately $325 per month. Petitioner's mother's yearly income from all sources was not exceeding $350, which was applied towards payment of her taxes, insurance, and upkeep of her real property, but was not sufficient to meet the entire expense, the difference being supplied by the petitioner in the amount heretofore stated.

In addition to the house above referred to in which petitioner and his mother lived, she also owned an undivided interest in the homestead of her father and a parking lot which adjoined it. The value of her real estate interests is not shown, nor the extent to which any of it is encumbered by mortgages shown to rest thereon.

The Fulton National Bank, executor of the estate of Donald A. Loyless, in 1933 filed a petition in the Superior Court of Fulton County, Georgia, making petitioner and his mother and other creditors of the estate defendants, which petition asked for a construction of the will of Donald A. Loyless, a determination of the proper assets of the estate, and a settlement by petitioner as executor, and asked that the court establish priority of claims, etc. A copy of the petition aforesaid and a copy of the decree of the court entered thereon upon September 30, 1933, are in evidence, in which decree it is, in part, stated:

It further appearing to the court that the parties hereto have agreed upon settlement of the foregoing claims and priorities, IT IS ORDERED, ADJUDGED AND DECREED [in part] as follows:

\*  \*  \*  \*  \*  \*  \*

11. It appearing that certain personal property and real estate is left in the hands of the executor, IT IS FURTHER ORDERED that all of said property shall be turned over to A. S. Loyless in full satisfaction of any and all claims that he may have against said executor, the Fulton National Bank, said A. S. Loyless receiving full and complete title to said property and upon further consideration of his agreement to reasonably maintain and support Mrs. Flora S. Loyless so long as she shall live, provided, however, that the said A. S. Loyless shall not be required to pay to Mrs. Flora S. Loyless more than $200.00 in any one month. It is further mutually agreed that Mrs. Flora S. Loyless shall renounce any claim against the executor, the Fulton National Bank, and to any and all property transferred by the executor to A. S. Loyless and hereby relieves the executor from any claim that the said Mrs. Flora S. Loyless may have against the estate of Donald A. Loyless and the executor, the Fulton National Bank, and said property transferred and sold to A. S. Loyless.

The fact that the petitioner expended in the taxable year about $325 per month for, or on account of, his mother and her property was commendable action on his part, but does not, in our opinion, justify his contention that his mother in 1934 was "dependent" upon him and that he was then the "head of a family." The fact that her several pieces of property produced *income* not exceeding $350

yearly, does not indicate that her interest in such property—though encumbered—was of little or no value, as petitioner contends. Very valuable property, temporarily and under unfavorable circumstances or management, may produce little or no income. So far as shown by the record, petitioner's mother still owns all the real estate heretofore mentioned as belonging to her, and the agreed decree is clearly a recognition of her claim against the estate of the deceased father of petitioner, to acquire which estate absolutely the petitioner agreed reasonably to maintain and support his mother to the extent of paying her $200 per month so long as she should live, upon the condition and consideration of his mother's renouncing any and all claim against said estate, its executors, etc., which she did. Thus, it appears that in the taxable year petitioner's contribution to the support of his mother in her own home was, to the extent of $2,400, pursuant to contract, merged into judgment, and for a valuable consideration, and not "based upon some moral or legal obligation", in the sense of article 25-4 of Regulations 86. For such contribution, he had received a very real and valid consideration, to wit, release of his father's estate, and the property he received as legatee thereof, free from his mother's lien. We think that a "legal obligation" within the meaning of the regulation is one *qua* head of the family, not one assumed by agreement for valuable consideration, as herein. The legal obligation referred to by the regulation is, in our opinion, of the nature of that in *M. A. Willem*, 39 B. T. A. 898, where the obligation was that of a court decree ordering a husband to provide for the support of a wife and minor children. Otherwise, one could at will set up dependents and a family, by contract with those otherwise not coming within either category. In *Louise D. Morrell*, 38 B. T. A. 239, we held that the petitioner was not entitled to credit for 64 boys whom she supported in an industrial school pursuant to agreement so to do and claimed as dependents, and said that the boys were not dependents within the meaning of section 25 (d) of the Revenue Act of 1932.

So far as concerns the claim of dependency above the contractual support of $2,400, it is clear that the petitioner's mother does not satisfy the regulation—article 25-6 of Regulations 86. She does not receive "her chief support" from her son (except under the contract which we have just said we consider insufficient basis for the claim) since the amount above $2,400, approximately $1,500, is not her "chief" support, or more than half thereof. Moreover, under the regulations, "The credit is based upon actual financial dependency, and not mere legal dependency." But petitioner's mother had property. True, in 1934 it produced only $350 income, but in our opinion that is not the

criterion. The value of the property is not shown. It may have been ample to support the mother, had she devoted the corpus thereof to her support by sale thereof. We think one with unknown wealth can not be claimed as a dependent, merely because the current income of such claimed dependent is insufficient for his support. In *John H. Watson, Jr.*, 38 B. T. A. 1026, petitioner spent $5,000 per year maintaining his mother in his own home. She having an income of approximately $3,000 per year, the $5,000 obviously was her "chief support" so far as current income is concerned. Yet, we held that the son was not entitled to the status of head of a family, the mother having an estate of $100,000, stating: "Obviously, petitioner's mother was not financially dependent upon him within the meaning of the regulation."

In *United States* v. *McHugh*, 253 Fed. 224, it was held that under the Selective Service Act and regulations, providing for exemption to registrants having dependent parents, the exemption did not extend to a parent "able to maintain himself, either from property which he owns or from his labor."

In *Schedzick* v. *Volney Paper Co.*, 184 N. Y. S. 424, the court held that, under the Workmen's Compensation Law in order to show dependency necessity must be established "and therefore a father owning a farm, who is supporting his family and increasing his capital without the assistance of a son, contributing some of his earnings, is not a 'dependent.' " The father had a 170-acre farm, costing $4,200, with $2,800 encumbrance thereon and a considerable income therefrom; also, personal property.

*McDonald* v. *Atlantic & Pacific Tea Co.*, 111 Atl. 65, holds that no one is a dependent under the Workmen's Compensation Law "who has sufficient means at hand to supply present necessaries, rating them according to the alleged dependent's class and position in life."

In *Gherardi* v. *Connecticut Co.*, 103 Atl. 668, it was held that under the Workmen's Compensation Act of Connecticut one "whose financial resources, at his command or within his power to command by the exercise of such efforts as he reasonably ought to exert in view of the existing conditions, are sufficient to sustain himself and family in a manner befitting his class and position in life without being supplemented by the outside assistance which has been received" was not a dependent. Practically the same language was used in *Rock Island Bridge & Iron Works* v. *Indiana Commission*, 122 N. E. 830, and was quoted in *Serrano* v. *Cudahy Packing Co.*, 190 N. W. 132, holding that under the Workmen's Compensation Act of Iowa, "Parents, who have sufficient means to supply present necessities according to their class and position in life, are not 'dependents'

within Workmen's Compensation Law, 'dependent' being one who is not self-sustaining, and the mere fact that parents used certain earnings of deceased does not establish dependency." The court quotes Webster's definition of "dependent" as "not able to exist or sustain self; not self-sustaining."

In the light of the entire record and particularly the decree from which we have quoted briefly herein, we are of the opinion, find, and determine that in the taxable year 1934 the petitioner's mother was not, in the sense of the applicable statute, section 25 (b) (2) of the Revenue Act of 1934, a "dependent" of petitioner and that the petitioner was not entitled to be classed as the "head of a family" within the meaning of section 25 (b) (1) of said revenue act, nor the same sections as defined and construed in articles 25–4 and 25–6 of Regulations 86.

We therefore are of the opinion and hold that the respondent did not err in his determination of the deficiency herein, and his action is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*