L. S. FRANKENAU, PETITIONER *v*. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 109538. Promulgated September 20, 1943.

704

*J. Kurt Holland, Esq.*, for the petitioner.
*Charles P. Bagley, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* This case involves income taxes for the year 1940 in the amount of $68.56. The question is whether the petitioner is entitled to exemption as the head of a family and to a credit for a dependent.

We find the facts to be as follows:

Petitioner's income tax return for the taxable year was filed with the collector for the district of Georgia. The deficiency notice recites a tax liability of $269.65, of which $201.09 was assessed, leaving a deficiency of $68.56. The $201.09 was paid during 1941 and within three years prior to the filing of the petition herein, the petition having been filed on December 26, 1941. Claim for refund was filed in the amount of $87.49.

The petitioner, up to about February 1939, resided at a hotel in Atlanta, Georgia. The room he occupied was not a housekeeping apartment. In February 1939 his sister, Adele Frankenau, arrived from Germany, whereupon petitioner leased a four-room apartment, and since that time he and his sister have lived together therein. His sister had practiced nursing in Germany, having been a graduate registered nurse. Conditions in Germany and in part the restrictions laid upon Jews became so difficult that she was unable to make a living there. In addition, she had developed, about 1938, a cataract in one eye which, to some extent, affected her professional work. The petitioner asked her to come to the United States and live with him, and she immigrated to the United States as a quota immigrant. In order to enable her to enter the United States, the petitioner furnished to the American consul at Stuttgart, Germany, an affidavit of support, stating in material part that he was well able and most willing to receive her upon her arrival in the United States, to maintain her, and to personally hold himself responsible to see that she did not at any time become a public charge within the United States; and that he believed Adele Frankenau to be an intelligent and industrious person of fine character who should prove to be a good citizen of the United States.

When the petitioner's sister first arrived in Atlanta she was not familiar with the English language, was not familiar with the customs of this country. She was a woman of about 44 years of age at that

time. In 1940 she had cataracts, and early in 1943 was operated upon in one eye. A cataract in the other eye had not at the time of trial yet developed to the extent to where it could be operated upon. In 1940 she could read to some extent. In 1939 she contacted the Georgia State Board of Nursing, thinking that she could be registered as a nurse, but was told that she would have to prove that she was capable and would have to take some courses for several months in a hospital until they found out whether she was capable of doing the work. There is no evidence of further effort to qualify for registration. She has not worked since 1939, except to do housework in the apartment where she lives with her brother. At the time of trial she spoke English at least fairly well. During the taxable year she had an income of $472.23 from a trust fund. She made no efforts to secure employment either as a nurse or of any other nature. The idea when she came from Germany was that she was to come over and live with the petitioner and that he would support her. She did the housekeeping in the apartment. During 1940 she often went to moving picture shows and could see them better than anything else. She belonged to the Council of Jewish Women and was interested in club work and welfare work. She went on trips, at one time spending about three weeks in New York City.

The petitioner paid all the household expenses, amounting to between $2,500 and $3,000 a year. This amount includes from $400 to $800 depreciation on household furniture, linens, dishes, etc. He also paid his sister for her personal use $300 and paid doctor bills in the amount of $50. His sister did not contribute any portion thereof out of the $472.23 received by her from the trust fund, but spent that money upon herself upon travel and upon her friends.

Under the above facts, is the petitioner entitled to a credit of $2,000 for personal exemption as the head of a family under section 25 (b) (1) of the Internal Revenue Code, as amended by section 6 of the Revenue Act of 1940,[1] and to a credit of $400 for a dependent under section 25 (b) (2) of the Internal Revenue Code.[2] Neither the

[1] SEC. 6. PERSONAL EXEMPTION.

(a) Section 25 (b) (1) of the Internal Revenue Code is amended to read as follows:

"(1) PERSONAL EXEMPTION.—In the case of a single person or a married person not living with husband or wife, a personal exemption of $800; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,000. A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,000. * * *"

[2] SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME.

* * * * * * *

(b) CREDITS FOR BOTH NORMAL TAX AND SURTAX.—There shall be allowed for the purposes of the normal tax and surtax the following credits against net income:

* * * * * * *

(2) CREDIT FOR DEPENDENTS.—$400 for each person (other than husband or wife) dependent upon and receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective.

term "head of a family" nor "dependent" is defined by the acts. Regulations 103, section 19.25–4, however, provides as follows:

A head of a family is an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. * * *

Upon consideration of the record herein and of the applicable cases, we have come to the conclusion that the petitioner is not entitled to either of the credits claimed. There is no doubt but that in some respects the petitioner satisfies the regulation. He actually supported and maintained in one household an individual closely connected with him by blood relationship. He furnished practically the entire support of such individual, but we fail to discern, in the circumstances here present, that a right to exercise family control and provide for his sister was based upon any moral or legal obligation; furthermore, we do not think that the sister is shown to have been actually dependent in any true sense upon the petitioner. To supply the legal obligation to support required by the regulation, the petitioner offers the affidavit made by him in order to secure her admittance as an immigrant into the United States, and argues therefore that he had a legal obligation. He does not argue that he had other legal obligation.

In *Augustus S. Loyless*, 40 B. T. A. 600, it was urged that petitioner had such legal obligation because he had entered into a contract to support his mother. We said:

* * * We think that a "legal obligation" within the meaning of the regulation is one *qua* head of the family, not one assumed by agreement for valuable consideration, as herein. The legal obligation referred to by the regulation is, in our opinion, of the nature of that in *M. A. Willem*, 39 B. T. A. 898, where the obligation was that of a court decree ordering a husband to provide for the support of a wife and minor children. Otherwise, one could at will set up dependants and a family, by contract with those otherwise not coming within either category. In *Louise D. Morrell*, 38 B. T. A. 239, we held that the petitioner was not entitled to credit for 64 boys whom she supported in an industrial school pursuant to agreement so to do and claimed as dependents, and said that the boys were not dependents within the meaning of section 25 (d) of the Revenue Act of 1932.

We think the above quoted language applies fully here and that the petitioner may not create a credit under the income tax law merely by the execution of an affidavit. In fact, it is with difficulty that a contract to support can be gleaned from such affidavit, for in substance it recites that the petitioner is well able and most willing to receive the sister, to maintain her, and to personally hold himself responsible to see that she does not become a public charge; but in fact he never agrees so to do. Much question might arise as to whether he was bound by contract in any proceeding which the United States might bring under such affidavit to force him to support his sister. Assum-

ing, however, that the affidavit contains contract, we do not think that it furnishes the legal obligation contemplated by the regulation. We are unable also to find moral obligation for such support. Petitioner's sister was an adult of about 44 years of age. She had professional training and ability as a nurse. She was not shown to be physically incapacitated, except that she had a cataract which impaired her vision to such an extent that in 1943 she had an operation. Another cataract had not reached that stage at the time of the trial herein. She was, in the taxable year, able to read to some extent, went to picture shows, which she was able to see, and took part in social matters. The record is not convincing that it would have been impossible for her to qualify as a nurse. Confronted with the necessity of preparatory work before being registered, she did not take such work. In our opinion, the facts do not demonstrate actual inability to carry on her profession, but indicate that no serious effort was made to do so, as is requisite to a showing of dependency. Moreover, she made no effort to secure other work to support herself. Assuming that she could not have read sufficiently to perform duties as a nurse, there is no showing that she could not have done other work to support herself and to prevent her being dependent upon her brother. The record does indicate that she was unfamiliar with the English language, although at the time of trial she seemed to speak it reasonably well, to judge from the testimony rendered by her. Such unfamiliarity with the language, however, is, in our opinion, not a factor sufficient to render her dependent upon the brother. We think we may take judicial knowledge from the annals of American history of the fact that millions of immigrants unfamiliar with the English language have succeeded in supporting themselves.

In short, the record to us indicates that the petitioner's support of his sister was, perhaps laudibly, voluntary upon his part and in consonance with his statement in the affidavit furnished the American consul at Stuttgart, that he had an annual income in excess of $5,000, with ample life insurance, and was well able to support his sister. Such commendable generosity, however, should not be made the base for a credit against income when that credit must depend upon the fact that the person supported in the household is dependent. We think the petitioner's support of his sister is not shown to be due to her inability to support herself, but to a brother's generosity, making it unnecessary that the sister make any real effort to support herself. In our opinion we find here neither the legal nor the moral dependency required for the credit as head of a family nor the actual financial dependency required, by Regulations 103, section 19.25-6,[3] for the

---

[3] Sec. 19.25-6. *Credit for dependents.*—* * *

The credit is based upon actual financial dependency and not mere legal dependency. * * *

credit of $400 for a dependent. The sister is not shown to have been incapable of self-support.

The petitioner cites our recent decision in *Elizabeth C. Massengale*, 2 T. C. 328. The reasons set forth in that opinion demonstrate conclusively the distinction from the present case; for therein it is shown a mother had a clear legal duty of supporting an adult child who had been incompetent from childhood and had continuously resided in the mother's home. Among other cases supporting in principle out conclusion above are *Richards H. Baumbach*, 42 B. T. A. 88; *Charlotte Hoskins*, 42 B. T. A. 117; and *Joseph N. Kallick*, 45 B. T. A. 992. We conclude and hold that the petitioner is not entitled to either the credit given the head of a family or to that given for the support of a dependent.

*Decision will be entered for the respondent.*