Beach Petroleum Corporation, Ltd., et al. [1] v. Commissioner. Beach Petroleum Corp. v. Commissioner
Docket Nos. 3273, 1236, 1229, 1231, 1232 and 1252.
United States Tax Court
1946 Tax Ct. Memo LEXIS 126; 5 T.C.M. (CCH) 638; T.C.M. (RIA) 46192; July 26, 1946
*126 A corporation distributed to its stockholders in 1940 participating oil royalty interests in wells it operated under lease. These interests had a cost basis of zero to the corporation and a fair market value of $68,000 when distributed. The stock of the corporation had a cost basis of zero to the stockholders and was held by them over 24 months. Held, (1) following General Utilities & Operating Co. v. Helvering, 296 U.S. 200, the corporation did not realize upon such distribution taxable income from the appreciation in value of such interests while held by it; (2) the appreciation in value of the interests is not to be included as earnings in determining whether distribution is from earnings or from capital; (3) the stockholders derived taxable income from the distribution of interests only to the extent of the earnings available for distribution, the balance was a return of capital, and the excess thereof over the basis to stockholders was taxable as long-term capital gain; and (4) the stockholders are entitled to percentage depletion deductions with respect to net profits received from the participating royalty interests, following Burton-Sutton Oil Co. Inc. v. Commissioner, 328 U.S. 25, *127 (April 22, 1946). A taxpayer who provided in her own home the major support and care of her granddaughter during the entire year 1940 was head of a family and entitled to credit for one dependent during such year. Daughter of taxpayer shown by the evidence to be dependent upon taxpayer for support for seven-twelfths of the year. Arthur McGregor, Esq., 728 Pacific Mutual Bldg., Los Angeles 14, Calif., and Charles F. Degele, C.P.A., for the petitioners. E. A. Tonjes, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: These proceedings were consolidated since they involve the effect upon Beach Petroleum Corporation, Ltd., hereinafter referred to as the corporation, and certain of its stockholders, or transferees of stockholders, *128 of the distribution as a dividend of certain participating royalty interests in wells drilled by the corporation under oil and gas leases it acquired. All deficiencies relate to the calendar year 1940. In Docket No. 3273 (Beach Petroleum) the respondent determined deficiencies of $15,516.17 in income tax and $5,164.24 in declared value excess profits tax against the corporation. The sole issue as to this petitioner is whether the corporation derived taxable income by the distribution among its stockholders of the royalty interests which had appreciated in value while held by the corporation. The respondent determined that the Estate of Leona May Burton, who was one of the stockholders of the corporation and who died December 1, 1940, was liable for a deficiency of $2,488.66 in income tax, and asserted deficiencies in that amount against each of three transferees of this decedent's estate, namely, Donald E. Bowen, Docket No. 1229, Justine M. Bowen Burton, Docket No. 1236, and LaVergne J. Round, Docket No. 1231. These three petitioners concede that they are transferees but contest the determination of the liability of their transferor. The respondent determined a deficiency of $1,339.49 *129 in income tax against Mary R. Garfinkel and Abe Garfinkel, as trustees of J. B. Garfinkel Trust Co. 1, Docket No. 1232, one of the stockholders of the corporation, and a deficiency of $4,490.47 in income tax against the Estate of Amber L. Ingram, Docket No. 1252. Amber L. Ingram was one of the stockholders and died March 1, 1941. The issues common to the cases of these petitioners are the taxability of the distribution to the stockholders of the royalty interests and whether the stockholders are entitled to deduct depletion with respect to the proceeds received by them from such interests. In the Ingram case, Docket No. 1252, the further questions are raised whether the taxpayer was the head of a family and entitled to credit for dependents and whether a deduction taken on account of a bad debt loss is allowable. In the Garfinkel Trust case, Docket No. 1232, the respondent concedes that income has been overstated in the amount of $176.57. This concession will be given effect in the computation under Rule 50. The facts are stipulated except with respect to the issues arising only in the Ingram case, Docket No. 1252. The stipulated facts are adopted as part of our findings of fact *130 and are summarized herein. Additional facts are found from the testimony introduced in the Ingram case. Findings of Fact Petitioner, Beach Petroleum Corporation, Ltd., is a corporation organized under the laws of California with its principal place of business at Long Beach, California. Its income, declared value excess profits and defense tax return for the calendar year 1940 was filed with the collector of internal revenue at Los Angeles, California. Such return was made on the accrual basis of accounting. Petitioner, Donald E. Bowen, is an individual with principal residence in Alhambra, California. Petitioner, Justine M. Bowen Burton, is an individual with principal residence in Arcadia, California. Petitioner, LaVergne J. Round is an individual with principal residence in Arcadia, California. These three petitioners, transferees of the Estate of Leona May Burton, deceased, who died on December 1, 1940, are liable as such transferees for any deficiency in income tax for the year 1940 that may be due from such Estate. An individual income and defense tax return for the calendar year 1940 was filed for the decedent with the collector at Los Angeles, California. Petitioners *131 Mary R. Garfinkel and Abe Garfinkel are trustees of a trust estate created under a declaration of trust on November 6, 1935, executed by Mary R. Garfinkel, a married woman, as grantor. The trustees filed a fiducairy income and defense tax return for the calendar year 1940 with the collector of internal revenue at Los Angeles. The respondent has overstated the fiduciary income of these petitioners in the sum of $176.57 representing the following amounts of expenses properly allowable as deductions in determining net income - telephone expense $13.10; post office box rent $13.39; accounting expense $72.50; and postage, office supplies and miscellaneous expense $77.58. Petitioner, Barbara J. Kelly, was appointed executrix of the estate of Amber L. Ingram on April 1, 1941. Amber L. Ingram died March 1, 1941, and this petitioner is her daughter. An individual income and defense tax return for the calendar year 1940 was filed for the decedent with the collector of internal revenue at Los Angeles, California. Beach Petroleum Corporation, Ltd., entered into an oil and gas lease on September 15, 1931, with the owners of certain oil lands. The lease reserved a 12 1/2 percent royalty interest *132 to the landowners. An overriding 4 percent royalty interest was subsequently issued to prior sub-lessors for relinquishing their interests in the lease. During the years 1931 to 1933 the corporation drilled three wells upon this property. Participating royalty interests were issued to the public to finance this drilling. On April 9, 1940, there were outstanding in the hands of the public participating royalty interests in the amounts of 22 5/6 percent in Well No. 1, 10 1/2 percent in Well No. 2, and 11 1/8 percent in Well No. 3. The corporation at the time of acquiring the lease and at the time of drilling the wells had no earnings or profits and all monies received from the sale of participating interests were used in drilling the wells. During the year 1940 the corporation had outstanding 772 shares of common stock of which one-fourth was held by G. C. Nelson, one-fourth by Leona May Burton, one-fourth by Amber L. Ingram and one-fourth by Mary R. Garfinkel and Abe Garfinkel, trustees for J. B. Garfinkel Trust No. 1. On March 23, 1940, the corporation's board of directors declared a dividend to petitioner's stockholders consisting of a 44 percent participating royalty interest *133 in Well No. 1, a 56 percent participating royalty interest in Well No. 2, and a 56 percent participating royalty interest in Well No. 3. On April 10, 1940, pursuant to such dividend declaration the corporation distributed to its stockholders as a dividend in kind such participating royalty interests. These interests distributed had a cost or other basis of zero in the hands of the corporation and a fair market value of $68,322.04 (instead of $53,614.04 as used by the taxpayers) on the date of distribution. The assignments gave the corporation the right to withhold from the proceeds the pro rata part of the cost of operation not to exceed seven dollars per month for each one percent of interest. The corporation had a deficit on January 1, 1940, of $30,310.04 and a deficit on December 31, 1940, of $30,183.08. In addition to the distribution of the participating royalty interests the corporation during the calendar year 1940 distributed cash dividends to its shareholders in the amounts of $1,930 on January 22, $1,930 on February 21, and $1,930 on March 21. The profits of the corporation during 1940, and before the deduction for statutory depletion of $3,915.72, was $7,831.44. *134 The stock of the corporation owned by the shareholders, Leona May Burton, Amber L. Ingram, and Mary R. Garfinkel and Abe Garfinkel, trustees of J. B. Garfinkel Trust No. 1, had a cost or other basis of zero in the hands of each of these shareholders and had been held by them more than 24 months prior to 1940. The assets received by each of such shareholders consisting of assignments of percentages of participating royalty interests distributed on April 10, 1940, had a fair market value at the date of receipt to each shareholder of $17,080.51. The gross amounts received by the corporation from the operations of the wells from April 10, 1940 to December 31, 1940, which were allocated to the stockholders, the expenses of operations deducted by the corporation applicable to this portion of the production and the net amounts distributed in cash to the stockholders are as follows: (1)
(2)
(3)
Expense deducted
Net Receipts
Share of
by Beach Petroleum
before
Stockholder
Gross Proceeds
for Operating Cost
Depletion
Mary R. Garfinkel and Abe Garfinkel, Trustees of J. B. Garfinkel Trust No. 1
$6,547.27
$1,922.72
$4,624.55
Amber L. Ingram
6,547.27
1,922.72
4,624.55
Leona May Burton
5,538.26
1,791.58
4,046.68
*135 The estimated reserves of oil in the three wells and the production during the period April 10 to December 31, 1940, in barrels, were, respectively, as to Well No. 1 - 85,492 and 15,652; as to Well No. 2 - 65,922 and 12,642; and as to Well No. 3 - 120,036 and 22,950; the totals being, respectively, 271,450 and 51,244. Leona May Burton died December 1, 1940, and therefore did not share in the production for the last month of the year which amounted to 5,236.27 barrels. Additional Findings of Fact in Docket No. 1252 Amber L. Ingram, one of the stockholders of Beach Petroleum Corporation, Ltd., died on March 1, 1941. During the taxable year 1940 she resided at Long Beach, California. In 1936 her daughter, Barbara, married John J. Roulstone. Barbara and her husband lived in San Diego, where a child was born to them in July 1937. In September 1937 the Roulstones returned to Long Beach and made their home with Mrs. Ingram. In October 1938, Barbara separated from Roulstone. She obtained an interlocutory decree of divorce in 1939 and a final decree in 1940. She was awarded alimony of $50 per month and was awarded $25 per month for the support of the child. None of the alimony was *136 ever paid, but during the year 1940 $25 per month was received on account of Roulstone for the support of the child. Barbara resided with her mother in Long Beach until May 1939. She was under a physician's care from 1937 through 1940. The physician diagnosed her condition as incipient tuberculosis and ordered her to go to a dry climate, preferably the desert. In May 1939 she went to a ranch in San Bernardino County. She stayed there until the latter part of March 1940 when she returned to her mother's home. During June of 1940 she went to Lake Arrowhead, where Mrs. Ingram rented a cabin for her and sent Barbara, the baby and a maid. Barbara returned to her mother's home in July 1940. On July 27, 1940, Barbara remarried, and did not live with her mother after that date. During the period January 1 to July 27, 1940, Barbara was incapable of self-support. Barbara's child, Joan Roulstone, lived with and was cared for by Mrs. Ingram during the year 1940, except for the month of June at Lake Arrowhead. During the entire calendar year Mrs. Ingram provided the major part of the child's support. During the entire taxable year 1940 Mrs. Ingram was the head of a family and had one dependent, *137 Joan Roulstone, for the entire year, and another dependent, Barbara, for seven-twelfths of the year. Opinion In Docket No. 3273 we have the issue whether the petitioner, Beach Petroleum Corporation, Ltd., derived taxable income by the distribution of royalty interests to its stockholders. Under the stipulated facts the interests distributed had a cost or other basis of zero to the corporation and a fair market value of $68,322.04 on the date of distribution. Appreciation in value of property while held by a corporation is not even an accrual of income prior to the realization of such appreciation through sale or conversion of the property. The question whether a distribution to stockholders of assets which have appreciated in value while held by a corporation is a realization of income to the corporation was involved in General Utilities & Operating Co. v. Helvering, 296 U.S. 200. In that case the Supreme Court sustained the decision of the Board of Tax Appeals that a corporation derived no taxable gain from the distribution among its stockholders as a dividend of shares of another corporation. See also National Carbon Co. Inc., 2 T.C. 57; Estate of H. H. Timken, 47 B.T.A. 494, *138 affirmed, 141 Fed. (2d) 625; and Commissioner v. Columbia Pacific Shipping Co., 77 Fed. (2d) 759, affirming 29 B.T.A. 964. Under these decisions where the corporation's resolution declaring the dividend imposes only the obligation to distribute in kind, and is discharged in that way, no gain or loss results to the corporation. Tested by this standard the distribution of the royalty interests in this case gives rise to no taxable income to Beach Petroleum Corporation, Ltd. The resolution authorizes a dividend of the property itself - the participating interest. It does not authorize a dividend in an amount of money, thus creating a debt payable in money, but which is later discharged by a distribution of property. We conclude that the distribution did not give rise to taxable income to this petitioner. Docket Nos. 1229, 1231, 1232, 1236 and 1252 involve the issues of the extent to which the dividends distributed are taxable to the stockholders of Beach Petroleum Corporation, Ltd., and whether the stockholders are entitled to a deduction for depletion with respect to the income they received from those interests. These petitioners contend that *139 the distribution of the participating royalty interests constituted a taxable dividend to the stockholders only to the extent of the available earnings and profits of the corporation (without including as earnings any gain from the appreciation in value of the interests), and a return of capital as to the remainder. On January 1, 1940, the corporation had a deficit of $30,310.04. Its earnings for the year, before depletion were $7,831.44. It paid in cash dividends $5,790 prior to the distribution of the royalty interests, paid a gratuity of $1,333, and accrued income tax for 1940 in the amount of $581.48, leaving $126.96 of net earnings available for further dividend purposes. The petitioners concede that the amount received by each stockholder is measured by the fair market value at the time of receipt, or $17,080.51, as under section 115 (j) of the Code, such a distribution is taxed to the stockholders on the basis of fair market value. They contend, however, that the distribution was taxable in the amount of $126.96, or $31.74, for each stockholder, the balance being a return of capital, and the gain thereon should be treated as long-term capital gain of which only 50 percent is *140 to be taken into account, pursuant to section 117 (b) of the Internal Revenue Code. Respondent contends that the corporation's profits were increased by the gain in value of the interests and that therefore the entire value of the distribution of participating interests was taxable income to the stockholders, as was also the amount of the cash dividends, citing Binzel v. Commissioner, 75 Fed. (2d) 989, certiorari denied, 296 U.S. 579, affirming BTA Memorandum Opinion, and Commissioner v. Wakefield, 139 Fed. (2d) 280, reversing BTA Memorandum Opinion. A distribution by a corporation to its stockholders may be a return of capital or a dividend out of profits. To the stockholder it is not income and not ordinarily taxable if a return of capital, but is income and taxable if a dividend. For a corporation to be able to distribute a dividend there must be profits in the year of distribution or accumulated prior thereto. Any distribution not in liquidation is required under the law to be from earnings rather than from capital. Section 115 (b), Internal Revenue Code. If the amount distributed, however, *141 exceeds the earnings available for distribution, the excess is a return of capital. Here, there were no accumulated earnings prior to the taxable year, and the earnings for the year available for distribution were only $126.96, unless the appreciation in value of the royalty interests is to be included in earnings available for distribution. In Commissioner v. Timken, supra, the corporation made cash distributions to its stockholders in an amount exceeding the earnings and profits for the year. There were no prior accumulated earnings. Later in the year it distributed to its stockholders certain stock which had substantially appreciated in value. The taxpayer applied the value of the shares distributed at their then fair market value to reduce his investment in the stock of the distributing corporation. The Court affirmed the decision of the Board of Tax Appeals that the distribution did not result in income to the taxpayer since the distribution was of capital and not of earnings, there being no earnings available for distribution. The case of Binzel v. Commissioner, supra, cited by the respondent, involved the distribution of stock which was said to have been purchased *142 out of earnings and profits of the distributing corporation and therefore was held to represent earnings and profits rather than an investment of capital. Commissioner v. Wakefield, supra, also cited by the respondent, turned upon the same point, - that the bonds and stock purchased out of earnings and profits represented earnings and profits instead of capital and the distribution constituted a taxable dividend at the fair market value when received. We do not consider them applicable here where the interests had no cost basis to the corporation and cannot be said to have been purchased out of profits. R. D. Merrill Company, 4 T.C. 955, involved a distribution of assets which had depreciated in value. The corporation had accumulated earnings and profits of $138,777.21 available for dividends and distributed among its stockholders certain stock of other corporations which it had acquired at a cost of $114,633.34 and which, when distributed, had a fair market value of $404. The question was whether the cost of these shares, or the fair market value, should be applied against the earnings and profits in determining whether a subsequent cash distribution *143 of $60,000 was from profits or capital. We concluded that the cost rather than the fair market value at the time of distribution, should be deducted. The reasoning followed in arriving at this conclusion is also applicable, where, as here, a substantial appreciation, rather than depreciation, in the value of the distributed property has occurred. When property is distributed in kind it is no longer a part of the assets of the corporation and the investment therein goes with it. That investment is the cost which, in the instant case, is zero. To charge earnings and profits with fair market value instead of a lesser cost would create a book situation contrary to the facts, and would result in a capital impairment upon the books by the amount of the appreciation, when in fact no impairment of book capital has occurred. We agree with the petitioners that the distribution of the participating royalty interests is a taxable dividend to the stockholders only to the extent of the available earnings and profits of the corporation, and a return of capital falling within the terms of section 115 (d) of the Internal Revenue Code as to remainder. The earnings and profits *144 of the corporation were not augmented by the unrealized increment in value of the assets distributed and that increase does not enter into the calculation of the earnings. The distribution is a dividend to the extent of $126.96 or $31.74 for each shareholder. The remainder was a return of capital to be treated as a capital gain to the extent to which it exceeded the basis of each shareholder, which in this case is zero. Since each shareholder's stock interest was held for a period in excess of 24 months the excess distribution is to be treated as a long-term capital gain, of which only 50 percent is to be taken into account. Sections 115 (d) and 117 (b), Internal Revenue Code. The stockholders claimed statutory depletion deductions of 27 1/2 percent of the income they received subsequent to April 10, 1940, from the royalty interests. The respondent disallowed these deductions, contending that the interests received by these taxpayers were not such economic interests in the oil in place as to entitle them to a deduction for depletion, pointing out that the assignments they received provided for a certain percent interest "in and to the proceeds hereafter realized *145 from the sale of all oil, gas and other hydrocarbon substances produced and saved from" the oil wells. Under this limitation, says the respondent, they were entitled to nothing more than a percentage of the net profits received from the sale of oil, and since the assignments provided for retention by the corporation of the costs of operation up to seven dollars per month as to each one percent of interest the stockholders would receive nothing unless production exceeded these costs, so that it would be possible for the output of the wells to be exhausted without any profits reaching the stockholders. Respondent argues that where the taxpayer receives a distribution only when and if there is a profit from producing and selling the oil he does not have an economic interest in the oil in place so as to entitle him to depletion, citing Anderson v. Helvering, 310 U.S. 404; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372; Helvering v. O'Donnell, 303 U.S. 370, and Schermerhorn Oil Corporation, 46 B.T.A. 151. The petitioners contend that the assignments made by the corporation did convey to the assignees an economic interest in *146 the oil in place, that since the oil itself was the only source to which the assignees could look for payment, there being no obligation on the corporation to pay except from production and after deduction of costs, the assignees are entitled to depletion deductions. The decisions of the Supreme Court in Kirby Petroleum Co. v. Commissioner, 599 U.S. 326, (decided January 28, 1946) affirming 2 T.C. 1258, and Burton-Sutton Oil Co. Inc. v. Commissioner, 328 U.S. 25, (decided April 22, 1946) affirming T.C. Memorandum Opinion, require a holding for the petitioners upon this issue. Under those decisions one who is entitled to a payment from net profits of oil produced is entitled to the depletion deduction if possessing an economic interest. In the Burton-Sutton Oil Co. case, it was said that ownership of a royalty or other economic interest in addition to the right to net profits was not necessary to make the possessor of a right to a share of net profits the owner of an economic interest in the oil in place. The Court there said that it is the person's "possibility of profit" from the use of his rights over production "dependent solely upon the *147 extraction and sale of the oil" which makes an economic interest in the oil. It is immaterial whether the taxpayer is the owner, lessee, operator, or transferee of one of these. Where the interest holder is dependent upon production alone for the recoupment of his investment the right to depletion is his. The argument that the interest holders might not realize any net profit from production if the expenses were large and the production small is beside the point. There is the "possibility of production" and whatever was realized was depletable. The allowance for percentage depletion is intended to permit the owner of an interest to recover his investment through the deduction of a part of the income. It is to compensate him for the reduction in value of his capital investment resulting from the extraction of minerals. Although here the capital investment of the petitioners in the stock was zero, they received the participating interests at a valuation of $17,080.51. In the Burton-Sutton Oil Co. case it was said that the cost of the investment to the beneficiary of the depletion right is unimportant. These stockholders received a part of the rights of the corporation which was the *148 operator under the lease, and which, but for the assignment, would be entitled to depletion deductions with respect to these percentages. These assignees are entitled to the depletion deduction and the disallowance of such deductions was error. In Docket No. 1252 we are concerned also with the question of the extent to which during 1940 Amber L. Ingram was entitled to personal exemption as head of a family and to credit for dependents. On the return filed for the Estate of Amber L. Ingram by her executrix a credit of $2,000 was claimed as the head of a family for the entire year and a credit of $400 for one dependent for the entire year for Joan Roulstone, grandchild of the decedent. The respondent disallowed these credits and allowed only the personal exemption of $800. This action is alleged as error. The petitioner, the executrix, also alleges that the tax was overpaid, claiming that in addition to the credits claimed on the return, a further credit should be allowed for an additional dependent for seven-twelfths of the year, as decedent's daughter Barbara, was dependent upon the decedent for her support until July 27, 1940, being incapable of self-support on account of ill *149 health during that time. Respondent concedes on the brief that Mrs. Ingram was the head of a family and entitled to credit for one dependent for seven-twelfths of the year. Mrs. Ingram's daughter, Barbara, and her granddaughter, Joan Roulstone, made their home with Mrs. Ingram and were supported by her until July 27, 1940. On this date Barbara married and left her mother's household and thereafter resided elsewhere, but Joan Roustone continued to reside with and was supported by Mrs. Ingram for the remainder of the year. The amount of $25 per month was received for the support of the child paid on the account of her father but the major part of her support was furnished by Mrs. Ingram. Respondent argues that Barbara's second husband was financially able to maintain and support Joan and that, therefore, Joan was not dependent upon Mrs. Ingram for her chief support and Mrs. Ingram was not the head of a family after July 27, 1940. Respondent says that Joan resided with her grandmother as a matter of convenience rather than necessity, that it would have been possible for Joan to live with her mother and stepfather and that her residence with her grandmother was only by reason of the *150 fact that the latter's home was more spacious, and contends that as Mrs. Ingram's daughter and grandchild were not dependent upon her after July 27, 1940, for their chief support, she is not entitled to the status of head of a family or to a credit for a dependent after that date, and the respective exemptions should be limited to seven-twelfths thereof. In Calvin Fleming, 4 T.C. 168, Acquiescence, I.R.B. 1945-6, 1, affirmed on another issue, 153 Fed. (2d) 361, Feb. 12, 1946, CCA-5, a taxpayer supported two grandchildren in his home. The father was able to support them but did not do so. The grandfather assumed the care of the children and provided their support. We held that the grandfather was the head of a family and entitled to credit for two dependents. The situation as to the grandchild is essentially the same here. While the mother and stepfather could have supported or cared for the child they did not do so and the grandmother did. The child was about 3 years old and dependent upon someone for care and support. The grandmother furnished this and is within the relationship which would qualify her for the exemption under the regulations. We think that *151 during the entire year 1940 Mrs. Ingram was head of a family, and that Joan Roulstone was dependent upon her during the entire year. Mrs. Ingram also supported her daughter, Barbara, during the taxable year until July 27, when Barbara remarried. Petitioner now claims a dependency credit for seven-twelfths of the year on this account. This credit was not claimed on the return but is asked for in the petition. Since Barbara was an adult it must be shown, not only that she received her principal support from her mother, but also that she was incapable of self-support. L. S. Frankenau, 2 T.C. 703. Barbara testified that she was under a doctor's care from 1937 through 1940, that she was ill, that her physician diagnosed the condition as incipient tuberculosis and ordered her to go to a dry climate, preferably the desert, that instead she went to a ranch in San Bernardino County from May 1939 to March 1940, that in April and May of 1940 she was at her mother's home in Long Beach, that in June her mother rented a cabin at Lake Arrowhead and sent Barbara, her baby, and a maid there, that she remained at the Lake until early July and then returned to Long Beach, that Mrs. Ingram *152 paid all the expenses of maintaining her at the ranch and at the Lake as well as at Long Beach, and that as a consequence of her condition she could not work and was incapable of self-support. This testimony was not contradicted and is not arbitrarily to be disregarded. Blackmer v. Commissioner, 70 Fed. (2d) 255. Under these stated facts as to the nature of her illness and the physician's instructions as to treatment, we believe that the witness was incapable of self-support and that she was dependent upon Mrs. Ingram during seven-twelfths of 1940. Mrs. Ingram was entitled to the personal exemption accorded a head of a family for the entire year, to credit for one dependent, Joan, for the entire year, and to credit for one other dependent, Barbara, for seven-twelfths of the year. The respondent concedes on the brief that Mrs. Ingram sustained a bad debt loss in 1940 in the amount of $3,495.55, as claimed on the return. Since the stipulated value of the royalty interests distributed is $68,322.04 on the date of distribution, instead of $53,616.04 as used by the taxpayers in their returns, a recomputation of the tax will be necessary in each case except in the case *153 of the corporation. Decision will be entered for the petitioner in Docket No. 3273. Decision will be entered under Rule 50 in Docket Nos. 1229, 1231, 1232, 1236 and 1252. Footnotes
1. The proceedings of the following petitioners are consolidated herewith: Justine M. Bowen Burton, Transferee of the Estate of Leona May Burton, Deceased; Donald E. Bowen, Transferee of the Estate of Leona May Burton, Deceased; LaVergne J. Round, Transferee of the Estate of Leona May Burton, Deceased; J. B. Garfinkel Trust No. 1, Mary R. Garfinkel and Abe Garfinkel, Trustees; and Estate of Amber L. Ingram, Deceased, Barbara J. Bertling (now Barbara J. Kelly), Executrix.↩