Emily Marx v. Commissioner. Emily Marx and Victor House v. Commissioner.
Marx v. Commissioner
Docket Nos. 15310, 15311.
United States Tax Court
1949 Tax Ct. Memo LEXIS 287; 8 T.C.M. (CCH) 55; T.C.M. (RIA) 49014; January 24, 1949
Emily Marx, Esq., for the petitioners. Henry C. Clark, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In these consolidated proceedings, responent determined deficiencies in income tax for the years 1940 and 1941, as follows: Docket
Defi-
No.
Petitioner [1]
Year
ciency
15310
Emily Marx
1940
$2,321.33
15311
Victor and Emily Marx
(husband and wife)
1941
4,264.14
*288 The following issues are presented for our consideration: (1) Whether certain claimed business expenses and other expenditures are properly allowable as deductions; (2) Whether expenditures for the upkeep and improvement of petitioners' home in New York are allowable deductions, petitioners contending that the home was offered for rental and sometimes rented during the summer season; (3) Whether petitioners are entitled to a loss deduction, resulting from a leasing arrangement entered into between House and a family corporation; (4) Whether petitioner is entitled to a dependency credit in 1940 for her mother-in-law and for her daughter. Findings of Fact During the years here involved petitioners were husband and wife, and were both lawyers, with separate and independent offices in New York City. Petitioner was also a member of the bar of New Hampshire and engaged in the practice of law in that State. House was a partner in a firm of lawyers, but was obligated under the partnership *289 agreement to discharge individually certain business expenses incurred by him in handling business he originated. Petitioner filed a separate tax return for 1940. For 1941 a joint return was filed by petitioners. Returns for both years were prepared on a cash receipts calendar year basis and were filed with the collector for the district of New Hampshire. Petitioners filed Form 872, "Consents Fixing Period of Limitation Upon Assessment of Income and Profits Tax", ultimately extending the time for assessment of tax to June 30, 1947. These were unconditional in their scope and effect. The deficiency notices were sent to petitioners on May 2, 1947. On the 1940 return petitioner reported total receipts from her law practice of $17,711.62. Included in this figure representing total receipts were all funds received from clients for future as well as part disbursements, fees and retainers, her salary as a Justice of the New York City. Domestic Relations Court, and income from the sale of books of which she was author. She claimed business deductions of $7,718.49, composed of the following items: Salaries
$1,618.15
Taxes
32.00
Depreciation
115.02
Rent
$ 910.20
Cables, telephone, electricity,
etc.
1,663.54
Filling fees, printing
473.14
Library, entertainment
1,518.01
Transportation, misc.
1,388.43
5,953.32
Total
$7,718.49
*290 In the notice of deficiency respondent disallowed all of the claimed deductions and increased petitioner's income by that sum, stating as his reason therefor that no competent evidence or appropriate information was submitted in substantiation of the claimed deductions. Respondent has conceded that expenditures in the claimed amounts were made by petitioner, but has not conceded, except as hereinafter set forth, the nature, purpose, or deductibility of the expenditures. He has made the same concession with reference to the claimed deductions for 1941, hereinafter more fully explained. At the hearing, however, he further conceded that deductions, totaling $2,651.76, should be allowed as business expenses for 1940, including therein the following items: Stenographic salaries
$1,565.65
Rent
910.20
Stationery
108.21
Texes
32.00
Bar Association dues and N. Y. Law
Journal
35.70
Total
$2,651.76
On her 1940 return petitioner also deducted the sum of $2,863.16 for taxes, included in which was an estimate of $300 for New York City sales tax, and $51.90 for New York City water tax. Respondent disallowed $200 of the $300 claimed for New York City sales tax, *291 as being unsubstantiated, and the amount claimed as New York City water tax as being a personal expense. On the 1941 return petitioner reported gross receipts from law practice of $5,954.55. As in 1940 petitioner reported all receipts from whatever source as part of her gross receipts from her professional practice. She claimed business deductions totaling $6,639.87, composed of the following items: Salaries
$1,879.15
Taxes
67.05
Depreciation
135.14
Rent
$ 877.16
Cables, tel., elec., postage,
stationery
902.19
Filing fees, printing
441.34
Library, entertainment
743.54
Associate counsel
409.97
Transportation, misc.
1,184.33
4,558.53
Total
$6,639.87
On that return House reported gross receipts from the practice of law of $3,546.45, and total business deductions of $2,408.74, composed of the following items: Depreciation
$ 208.67
Professional dues
$ 587.14
Bank charges, printing
117.28
Entertainment of clients
331.01
Transportation, misc.
1,164.64
2,200.07
Total
$2,408.74
Respondent disallowed these deductions claimed by petitioners, on their joint return, as being unsubstantiated. At the hearing, *292 however, he conceded that the following deductions should be allowed as business expenses in 1941: As to petitioner: Salaries
$1,017.50
Advertisements for stenographers
6.40
Postage
191.27
Stationery
83.67
Rent
877.16
Taxes
67.05
Bar Association dues and Law Jour-
nal
27.00
Total
$2,270.05
As to House: Dues and payments to professional
organizations
$ 142.50
Included in the total of business deductions for 1940 and 1941 were donations made by petitioners to litigants who appeared before petitioner when she served on the New York Domestic Relations Court; commutation fares, payments for utilities at the family homes in New York and New Hampshire, salaries of personal servants, social and political club dues, and other such personal expenditures. In addition to the deductions conceded by respondent, petitioners expended the following additional amounts as expenses of their businesses: 1940
Petitioner: Salaries
$ 52.50
Cables, telephone, electricity, post-
age., stationery
600.00
Filing fees, printing
473.14
Library, entertainment
500.00
Transportation, miscellaneous
300.00
Total
$1,925.64
1941
Petitioner: Salaries
$ 861.65
Cables, telephone, electricity, post-
age, stationery
300.00
Filing fees and printing
441.34
Library, entertainment
175.00
Transportation, miscellaneous
100.00
Associate counsel
409.97
Total
$2,287.96
House: Bank charges, printing
$ 52.00
Entertainment of clients
100.00
Transportation, miscellaneous
250.00
Total
$ 402.00
*293 Petitioners have failed to substantiate as allowable business deductions any other items. In 1936, petitioners acquired a large home on Waldo Avenue in New York City, in which they and their children lived. The home was acquired for occupancy as a city dwelling, with the prospect of renting it during the four summer months. In the summers of 1939 and 1941 it was rented. During the summer of 1940 the home was occupied by petitioner and a servant. Petitioner is not entitled to deduct any of the expenses incurred in maintaining the home during 1940. In 1941 petitioners rented the home during the summer months at a rental of $1,075, which sum petitioners did not report as gross income, but which respondent, in the notice of deficiency, added to their gross income. Petitioners now claim a deduction of maintenance expenses for 1941 on the residence of $5,392.31, which sum includes expenditures for capital improvements, such as appliances, china and utensils, to be used only by the tenants and to be stored during the occupancy of petitioner, as well as depreciation on building and furnishings of $2,500. No basis for depreciation thereon has been shown. The allowable portion of *294 expenses incident to production of the rental income is $500. In 1935 petitioners organized a New Hampshire corporation known as The Houses, Inc., for the purpose of acquiring certain real estate at Alstead, New Hampshire, consisting of approximately 100 acres of land, with several buildings thereon. Fifty per cent of the stock was issued to petitioner as trustee for one of her children. The remaining stock was issued to House as trustee for another child. House was president; petitioner, secretary; and her brother, a director. At the time of the acquisition by the corporation of the real estate it purported to lease to House a number of the buildings thereon for a term of three years, at an annual rental of $5,000. House thereafter subleased some of the buildings covered by such lease but sustained a loss during each of the years the lease was in effect. The lease was, however, renewed by him at the end of the three-year period. By reason of this transaction House sustained a loss in 1937 of $2,024.44; in 1938 of $4,478.08; in 1939 of $4,867.03. In 1941 House received rentals from the dwellings subleased by him of $1,025. By virtue of the rental paid to the corporation under *295 the lease, a loss in the sum of $3,975 was claimed by petitioners on their 1941 return. Respondent disallowed the claimed loss and explained his action in the notice of deficiency, as follows: "Deduction claimed for alleged net rental loss on property located in Alstead, New Hampshire held not to represent an allowable deduction from your gross income under any of the provisions of section 23 of the Internal Revenue Code." On her 1940 tax return petitioner claimed, inter alia, as credit for dependents - a minor child, Janet House, and her mother-in-law, Frances C. House. Respondent disallowed the credits for the reason that the named persons were not dependents of petitioner in the year involved. During 1940 Janet House and Frances C. House received their chief support from House. Opinion KERN, Judge: The business deductions claimed by petitioners, which are still in issue in these proceedings, fall into three general classes: Those which appear on their face to be ordinary and necessary business expenses of petitioners in carrying on their professional practice, examples of which, under the facts here, are payment of filing fees and the cost of printing *296 briefs; those which appear on their face to be personal and hence nondeductible expenses, such as salary for personal servants and donations to indigent individuals; and, thirdly, those which might fall into either of the former classes dependent upon the proof offered. Examples of these are telephone expenses, entertainment expenses, transportation costs, and expenses incident to the operation of automobiles. Failing precise proof as to these latter expenditures, an approximation and allocation is permissible under the rule of Cohan v. Commissioner, 39 Fed. (2d) 540. A misconception pervades petitioners' briefs, for they appear to be of the view that since they have shown the amounts of certain expenditures they need not further establish at this time that the expenditures are deductions authorized by statute. The rule, of course, is to the contrary. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435. The basic difference in the nature of the items claimed as deductions, however, leads to a different quantum of proof required by petitioners to sustain their contention. Evidence that might satisfy to support a claim for deduction of office rent and secretarial *297 salaries might well be insufficient to support a deduction for social club dues and other such expenditures where there is a large personal element, which petitioners are urging were properly business expenses. Cf. George K. Gann, 41 B.T.A. 388, Maurice P. O'Meara, 8 T.C. 622; 4 Mertens, Law of Federal Income Taxation, Section 25.79. No useful purpose would be served in detailing each individual item of expense claimed by petitioners, ranging from $1.50 for a motor vehicle operator's license to over $900 for office rent. We have allowed as deductions additional amounts to cover salaries of secretaries and other clerical assistants. We have allowed as deductions expenses of printing and filing fees, any reimbursement of which by clients was included in the gross income of petitioners. We recognize that expenses of telephone and postal are generally ordinary and necessary business expenses of attorneys and have allowed substantial proportions of the amounts claimed therefor, with small adjustments to reflect obvious personal use. We believe that inordinately large amounts were claimed as expense deductions for entertainment and transportation by both petitioners, *298 there being included in such totals obvious personal expenses such as commutation fares, salaries of personal servants, donations to indigent persons, and the like. Of the same type are deductions sought by petitioners for certain hotel charges incurred while in New York City at a time when their New York home was leased to others. These expenditures, as are those incurred by them while living at home, are personal and consequently not deductible. A. D. Amerise, 1 T.C. 1108. Cf. S. M. R. O'Hara, 6 T.C. 841. There is no substantial evidence to permit the deduction claimed as "professional dues" by House consisting of dues paid to social clubs and political clubs, where it appears that if any business use of the facilities were made, it was incidental to an overriding personal purpose. Louis Boehm, 35 B.T.A. 1106; Home Guaranty Abstract Co., 8 T.C. 617. With reference to these and the other items claimed as deductions which might include both personal and business expenditures, we have followed "our established practice" in using "our best judgment in determining the * * * amounts actually expended" for business purposes. *299 Maurice P. O'Meara, supra, at 631. And the amounts so determined have been found as facts. Respondent's action in disallowing a portion of the deduction claimed for New York City sales taxes must be sustained for failure of any proof on the part of petitioner. His act in disallowing the New York City water tax is approved on the authority of Mahler v. Commissioner, (CCA-2) 119 Fed. (2d) 869, certiorari denied, 314 U.S. 660. 2. As to the claimed deductions on their Waldo Avenue home, petitioners seek to invoke section 23 (a) (2) of the Code, [2] as added by section 121 (d) of the Revenue Act of 1942. It is undisputed that the home was occupied by petitioners, or at least one of them, during all of the two taxable years herein involved, with the exception of the summer of 1941. *300 There is no warrant in the record for allowing any of the deductions claimed in connection with this property for 1940, for as to that year there is no showing that the property was held for any period of time "for income-producing purposes." Warren Leslie, Sr., 6 T.C. 488, 494. During that summer it was, in fact, occupied by petitioner. It further appears, on the basis of the record, that no part of the 1940 expenditures are attributable to the summer rental in 1939. As to 1941 we must reach a different result. The house was offered for rental during the summer season, and was actually rented for that period. Under these circumstances it is proper to assume that some portion of the claimed expenses were incurred in the maintenance of property held for the production of income. Not all of the claimed deductions are allowable. They contain expenditures for capital items, such as electrical appliances and the like for the tenants, which have a life expectancy of many seasons and hence are not deductible in full in the year of purchase. Furthermore, it appears that the bulk of the expenditures was incident to the maintenance of the house as petitioners' home, and hence *301 only some aliquot part can be deducted as being attributable to the production of income. What we believe to be the amount so deductible has been found by us as a fact. 3. Whatever may have been the merits of the lease entered into by House with the family corporation in 1935 relative to the New Hampshire property, the renewal of the lease at the same rental after a history of repeated losses casts doubt on the real nature of the transaction and requires that it be subjected to "special scrutiny" in order to prevent the creation of artificial losses for tax purposes. Cf. Commissioner v. Sunnen, 333 U.S. 591; Limericks, Inc., 7 T.C. 1129, affirmed 165 Fed. (2d) 483. Except for the intimate family relationship, it seems highly doubtful that the lease would have been renewed at the same rental, in view of the substantial losses suffered in the earlier years. House admitted that he was not legally obligated to renew the lease, but stated that he felt morally obligated to renew because his children were infants. It is obvious that House was not concerned over the exact character of these payments to the corporation. By treating them as rent paid, *302 his children would benefit by them, and he individually would receive a tax advantage by reporting the loss. It should be noted that petitioners' testimony regarding the transaction, the scope of corporate activities, and the like were, at best, vague and inconclusive. Moreover, petitioners failed to comply with the subpoenas of this Court to produce the corporate records that might have shed some light on the transaction between House and the corporation. This failure to produce the required material within their possession "gives rise to the presumption that if produced it would be unfavorable." The Wichita Terminal Elevator Co., 6 T.C. 1158, 1165, affirmed 162 Fed. (2d) 513. In the absence of this information and in the absence of a satisfactory showing in the record that the payments to the corporation, or any part of them, constituted, in reality, rentals, we must uphold respondent's determination disallowing the claimed loss in its entirety. 4. In order for petitioner to claim dependency credits for her daughter and her mother-in-law in 1940, it was incumbent upon her to establish, inter alia, that the individuals received their chief support from *303 her. Augusta S. Loyless, 40 B.T.A. 600. This she has failed to do, for the record convinces us that petitioner's husband, and not she, chiefly supported them. Because of respondent's concessions, no question as to dependency credits is involved for the year 1941. There is no merit to petitioner's argument that the time within which respondent could have disallowed such dependency credits had expired prior to the issuance of the notice of deficiency. Here, unconditional waiver forms (Form 872) were executed, and petitioner's point based upon situations where the waiver forms are expressly limited and qualified in scope and effect by the parties are totally inapplicable. I.R.C., section 276 (b). Cf. Nathan Loeser, 27 B.T.A. 601; Windfall Grain Co., 23 B.T.A. 725. Decisions will be entered under Rule 50. Footnotes
1. Hereinafter Emily Marx, alone, will be referred to as petitioner, and her husband will be referred to by his surname. When both are referred to, they will be designated as petitioners.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩